May it please the court. Does this sound okay? Please keep your voice up. Is this better? Much better. Project. Okay. This morning, two days after the New Hampshire presidential primary, we asked the court to vindicate the fundamental right of Long Beach citizens to directly propose and vote on legislation by enforcing the Due Process Clause, specifically under the Fifth Circuit's holding in Duncan v. Poythress, the First Circuit's holding in Griffin v. Burns, and this court's holding in Bennett v. Yoshino. The core issue at stake is critical to due process jurisprudence because it goes to the very integrity of our election process. Is it really about the California Election Code? Excuse me? Isn't this case really about the California Election Code? It begins with the California Elections Code, but because what You keep citing California Supreme Court decisions, the effect we've got to interpret that very liberally, so on and so forth. Why are we in Federal court? Why do you file the case here? Because an entire electorate has been disenfranchised. The same is true of the entire electorate of California citizens. The California courts could look after that. I mean, I don't question your legal entitlement to be here, but I'm puzzled that an argument that depends so much on language from California Supreme Court decisions isn't taken where the California Supreme Court can speak  It's brought to Federal court and you're urging us to follow what the California court says, which are required to do for matters of State law, but it puzzles me, why are we here? If you think California law so supports your case, why didn't you file in a California court that will plainly follow the California Supreme Court? The reason is that due process is gravely implicated here. So the due process is recognized by the California Supreme Court. I mean, my sense is that you want to be here because you think your chances are better here, but you're trying to persuade us of what the California court would do rather than take your chances with a California court. And that just seems odd to me. Suggests that maybe the California courts aren't quite as disposed to do what you'd like them to do, in which case I'm not sure why we should. We believe we're in the right court, Your Honor, and that's because under the Due Process Clause, the government is simply not allowed to unfairly change the rules. Well, what rules changed? Well, under the long-run rules. Your petition didn't say anything about a regular election. Well, it's an unfair application of the electoral rules. So what you have here is you have a government official who steps ultra vires to block a properly qualified measure. That you see, you keep sticking in adjectives that beg the question. If it's ultra vires, if it's properly qualified, then the case is over. But those are the issues you have to deal with. This petition didn't say anything about a regular election. So don't keep giving me adjectives that beg the question. Tell me why we should cut your clients some slack. Because basically it looks to me that's what you're trying to say. You're trying to say, well, it's good enough for government work, and maybe it is. But just telling me it's fully compliant with the law doesn't tell me anything. There is no need to expressly request a general election under California law for a few reasons. Number one, the plain language of section 9215, the statute at issue here, does not require one to expressly request it. And that's in contrast to section 9214, that's the statute governing special elections, which does expressly request, require that a proponent expressly request a special election. That's point one. Do it. Isn't it somewhat misleading to the signatories on the petition to propose to them a special election with a recognizably different electorate than a general election, and they sign on for a special election? And then, because you don't get enough signatures for a special election, you say, well, let's go to a general election. Wait a minute. You told the people who signed this petition that they were signing on for a special election with a special election electorate. Now you're shifting the cards, and you're saying it's a general election, and you're saying you have a federal constitutional right to that. Where do you get that? Two points, Your Honor. Number one, the folks, the nearly 15 percent of Long Beach voters who signed this petition, in our respectful view, care about getting it on the ballot, period, whether it be for a special or regular. Were they told that they were signing a petition for a special election? I'll grant you that the language has the word special in very small print. And don't words mean anything anymore on a petition? They do mean something. What it means is that ---- I mean, it would have been easy for you to say, here's a petition for a special election or a general election, depending on how many signatures we get. That's certainly one way of doing it. Go do it again. Well, it costs ---- I'd like to make two points. One is it costs a lot of money and time to do that again. But number two, I'd like to ---- But whose fault was that? Your Honor, with all due respect, it was not a matter of fault. In fact, under Blotter v. Farrell, in dicta, the Court stated that you had the exact same situation. You had a case where the proponents requested, expressly requested a special election. And in dicta, the State supreme court noted that they ---- the State supreme court stated that the proponents had a right to get on the special. But they said even if it had not qualified for the special, it would still qualify for the general election. This case goes ---- What case is that? Blotter v. Farrell, 1954. The site for that is 42 Cal 2nd, 804, pinpoint site 808. 42 Cal 2nd, 804, pinpoint site 808. And that's a critical case that, with the Court's indulgence, I'd like to talk about a little bit. Because the facts are very close to this case. I mean, there, as I mentioned, you had an express request for a special election. And in that case, what happened was that at the first go ---- at that point in time, supplemental signatures were allowed. In other words, you were allowed to add your signatures after you turned in the first batch. That's not the case anymore. But at that point in time, what happened was the proponents submitted basically 11 percent of the electorate signatures. Then they later supplemented it so that they came out to have something to the effect of 16 percent of the signatures. So in other words, it qualified for a special if you count the supplemental. What the city did is it blocked this measure from qualifying altogether for an election. And the logic was ---- is reminiscent to what the city is using, the city clerk is using  number one, the city said, oh, we won't condescend the supplementary signatures. So suddenly ---- Roberts. Which was contrary to statute at the time. Yes. That was the statute. And we don't have anything quite like that here. But, okay, keep going. Yeah. If you don't indulge me. And so what they did is said, okay, fine. You don't have 16 percent. You have 11 percent. Okay. So that's squarely within section 9, the old section, the current section 9215, and they're referencing the superseded version. All right. And then what the city said is that apparently since they refused to get on the ballot is, oh, you don't ---- you didn't request a general election, so we're not going to put you on the ballot. What the state supreme court did is it squarely held under the rule of liberal construction that number one, the ballot initiative did qualify for a special election, and it noted in dicta that even if that ballot initiative had not qualified for a special election, it would still qualify for a general election. It would still. It would still. Now, it would still. If the clerk's certificate shows a petition to be insufficient, a supplemental petition in form a duplicate of the original petition bearing additional signatures may be filed within 10 days of the date of the certificate. There's no supplemental petition here. Is there, Mr. Duda? No, but I would ---- All right. Let's go to something else. Okay. What in the case do you point to as a holding of the court or a statement by the court? Because the closest thing I saw is something that describes what the party's argument was, not what the court was determining. What we have is that ---- Is there something in particular I should point to? Page 808. I'm there. Okay. And then there is language to the effect that ---- You can grab it if you want to. Okay. Sure. It said 808. Ah. So this is at page 808. Let's see. I'm starting with a paragraph here that states, Defendants also argue that the supplemental ---- Well, that's what I'm looking at, because it tells me what defendants argue. Okay. So now I'll go to the second sentence. This argument is based upon the fact that the original initiative petition containing the signature of 11 percent of the voters was sufficient for the application of section 1712, which is the old 9215. And that's an ---- and the full text of that is published at footnote 1 of this case. I hear you, but I have trouble seeing that as a reasoned decision by the Court. I see that as a description of the premise of the defendant's argument. I ---- okay. Here we say. And there's another case that actually is relevant here as well, and that's the Mission Springs v. Verheul case, because there what happened was that the Petitioner requested a special election or a general election. And let's see. I'll give you the site for the Mission case, which is 218 Cal App 2nd, 892, pinpoint site 900 and at footnote 2. And there it enunciates the same basic rule that we're talking here, because basically all of this involves a black-letter law rule. If you have enough signatures that it's ---- But that's a petition that said what your petition should have said. It didn't. It actually ---- it said something different. It didn't say in the alternative. It just said that we request either a special election or a general election. And what the Court said is that it does ---- that basically since it didn't express any preference, that it would definitely qualify for a general election. That's footnote 2 of that case. But the general rule throughout all of this is that it's a simple case of math. If you have 10 percent of the voters sign on to a petition, you qualify for the general election ballot under Section 9215. Can you show me a case that says that's the case, even though the petition doesn't refer to qualifying as a general election ballot issue? There is ---- Which is the case presented here. Excuse me? Which is the case I think is presented here. The problem here ---- I haven't seen a case where the Court has taken upon itself to amend the language of the petition. Is there a case where the Court's amended the language of the petition? I would just disagree slight with the premise of it. So first answer is there is no case squarely on that, number one. And number two is that we do not view this as amending the language of the ---- You want us to take out the word special and insert the word general. Well, we already have Blotter. Blotter basically states that you can ---- basically the fallback is that if you can't qualify for a special, it doesn't dictate that you qualify for a general. And one thing I'd like to also dwell on is the very language which the city ---- If the California Supreme Court wall was all that clear, then you'd probably be in the Superior Court of California. It's pretty clear. And you keep citing us to California cases. Well, this is California. And then obviously we'll discuss due process. But one thing I want to discuss with, because this is something that the city has basically talked upon, you know, at length, is the issue of the phrase required to be, you know, on Section 9215b. And it doesn't apply here in the way the city argues for a number of reasons. And I'll just go through them as quickly as I can. Number one, the city clerk acted ultra-virus. And I use that word on purpose because under Section 9215, only, quote, the legislative body, unquote, can make the call of whether, you know, a ballot measure has qualified. You know, that's the heading of 9215. It's the legislative body, not the city clerk. So that's point one on making the decision. So the city clerk cannot make ---- is a ministerial official and cannot exercise discretion. And that's from Friends of the Bay's Meadows, which is 157 Cal 4th, 1175, as well as from the MHC v. City of Santee line of cases, which is 125 Cal App 4th, 1372, pinpoint site, 1383. So that's point one. This sounds like an argument a little different. I mean, Bay Meadows is cited in your brief, but I don't see it cited for the proposition that only the city council can make the decision, not the city clerk. It's for the proposition. Kennedy, did you make that argument in your brief? It's the ---- we make the argument that this ---- Yes or no? Did you make that argument in the brief? Yes, that we ---- that the city clerk cannot exercise discretion. That was in the brief, yes. The notion that the only ---- that he's not the right official, that it's a decision that you can make. Yes, we did make that argument. Where is that? We did make it in the brief. It's in the reply brief. So the first time it's mentioned is in the reply brief. Okay. I'll settle for that answer. Also, Your Honor, it is actually mentioned in the opening brief in the introductory section 2, the fact that the city clerk is a ministerial official. It is there as well. Oh, yeah, but the argument that he's not empowered, only the city council can make it, that's the argument I just heard you make, and I hadn't heard that before. And we've also made that argument at the trial level as well. It's in the transcript. It's in the papers. Well, that ---- what does that do for me? You're articulating an argument I've never recognized, so I'm asking why should I recognize that argument? And you're telling me because you made it to the district court. We also made it in the reply brief in response to arguments that were made by the city. Okay. So that's point one. Point two, as the majority of this Court from the earlier ruling on preliminary injunction noted, quote, it is possible that the language in 9215B, which is the  for a general election by placing it on a regular election ballot scheduled for a later time. And that's 584 Fed Appendix 334 at 336. Now, this is really important because here's what ---- if you look at what 9215 and 9214 say, 9215 specifically applies to any ballot measure that gets at least or greater than 10%. But 9214 ---- and 9214 applies to anything that gets at least 15%, any ballot measure. But here's the catch. There's no ceiling attached to 9215. In other words, it doesn't say this only applies between 10 and 15%. So what the ---- what this ---- what the Court of Appeal was noting was at that point was that this ensures honesty by the city government to make sure it's not ---- a special election request is not slotted in the wrong place. And this is confirmed by legislative history, too. The State Senate 2000 analysis at the time that 9215 was amended, and it said, reaching the higher of the two thresholds will force the governing body to place the measure on a special election ballot within specified guidelines. And, Your Honor, I'll set ---- I'd like ---- I forgot to request a time to respond to the other states. Well, you're already two minutes over, so we'll see if there's need for rebuttal. Actually, a minute 45 over. Okay. So ---- Well, if you keep talking, there's unlikely to be any time left because you're already in deficit. Do you want to keep talking? If there are no other questions, I'll respond. I'll wait. Okay. We'll hear from the city. Good morning, and may it please the Court. It's always difficult to try and determine the intent of the voters unless you actually know what it was that they were voting on. And the only evidence that was before the district court is that a certain number of to allow medical marijuana dispensaries. That was the only thing those voters were told. And then when that petition failed to achieve the required number of voters to actually have the special election, under Election Code Section 9214, the city clerk had only the option of taking no further action on the petition. The appellant wants this court to try and determine the will of the people by amending the petition that was put in front of the voters and to essentially hold where no other court has held that if you ask for a special election and only a special election, but you somehow don't qualify for that, that the California legislature actually meant we'll put it on the general election ballot anyway. What would be so bad with that? In general or in this specific case, Your Honor? In general or in this specific case, Your Honor? In general and in this specific case. Well, starting with in general, do we want an elected official to try and determine what the voters actually wanted based on that elected official's sense of the popular will and then make alterations to not only the language of the petition, but the process by which that petition was put forward, because that official thinks, well, that's what they must have wanted. They wanted an election. They did want an election, Your Honor, but as you pointed out during appellant's portion of the oral argument, there are many reasons that somebody might want a special election as opposed to a general election, including not getting lost in the noise of a general election or having a general election. And so I think it's important to have the attention that you feel it deserves. Do you think that would really matter to a signatory? I mean, because of this job, I spend a fair amount of time in California, and you walk down the street, and if you're here very long, somebody's going to approach you to sign a petition at certain times of the year. That's just the nature of the beast. And I don't see many people really looking carefully at what they're signing. They're told in a sentence what it's about. They sign, or they walk by, and that's it. I mean, realistically, did it make a difference to the signatories? And I'll extend going back to what you were saying. The city clerk, if he had decided that way, that is, the signatories wanted an election, they didn't qualify for the special, but they can have the general, and he'd put it on the ballot that way, or if the city council decided to do that, I mean, would that really have been exceeding his authority? It would, Your Honor, because if you look at both 9214 and 9215 of the Elections Code, the legislature specifically says that the legislative body's options, and by extension, their options, can take the ordinance without alteration and put it on the ballot. This particular ballot initiative said in two places, special election. The California legislature has given the voters the option of a special election. It has a higher burden, but there may be very valid reasons to do it. You want it faster than the general election or the other reasons I explained. Well, there are reasons why you'd want it special. So now we will make our way back to the first part of my question, which is, is it plausible to believe that the signatories were saying, I want a special and only a special, and if I don't get enough signatures for a special, I don't want it to be on the ballot for a general election? Now, I can understand how the sponsor may reason it out that way, but I have difficulty seeing how the signatories reason it out that way. Well, Your Honor, I guess the question is, who would have the burden of putting on some evidence of the signatory's intent? It should be the person that put the petition in front of them who could have gone back to those signatories and said, oh, wait, we didn't get enough for the special election. Are you okay with the general election? Now, that might be burdensome and it may be costly, but they're the ones putting forth the evidence. Otherwise, you're asking the city clerk to decide, well, they must have wanted it on the ballot somehow, so we'll put it on the ballot. Now, that may serve the interests of the 40,000 or so people who signed the petition, but that doesn't necessarily serve the interests of the 200,000 people in the city of Long Beach who are registered voters who didn't sign the petition. So if you're talking about who should have the obligation to produce some evidence as to the voter's intent, I think it's safer and better public policy for the proponent of the legislation to produce that evidence of intent as opposed to leave it up to a city clerk to try and divine that. We've seen what happens when people are looking at ballots to determine whether the chad is hanging or not. And I don't mean to be flippant when I say that, Your Honor, but the country was put into a very difficult situation when we're trying to divine a voter's intent based on how far in they pushed a punch-out ballot. And I think especially since the legislature did not, it wasn't that long ago that they amended the As long as you've got 10% of the signatures, you get on the general election ballot whether you request it or not. They could have said that. What they said is you get on the general election ballot if you have 10% of the signatures unless it's required to go to a special election. So the real question is whether or not calling for a special election and only a special election means that it's required to go there. And the plain reading of the initiative and the plain reading and context of 9214 and 9215 lead to that conclusion. If all you ask for is a special election, that's all you get. And if you don't qualify, you don't qualify. And just addressing briefly the district court's grant of summary judgment, there's nothing that indicates that 9215 is unconstitutional. There's nothing that indicates that the city clerk did not have the discretion given to him by the election code to do a sample of 3%, the random sample. That doesn't appear to be a serious challenge here. There doesn't appear to be any argument that he did it improperly. So really the only question before the court is whether or not the district court properly interpreted the interplay between 9214 and 9215. Because if the district court did, then there's simply no basis to reverse the grant of summary judgment in favor of defendant on both the California constitutional claim or the as applied challenge as well as the due process violation. And I'll answer any questions that the court may have. And just the last thing about the injunction. Obviously, if the panel determines that there was an incorrect interpretation and enters judgment in the favor of the plaintiff and the appellant, then an injunction may be appropriate, although it would have to come to that. And the question really is begged. This was first put before the voters in 2012. It's now 2016. There have been a number of changes to the state laws regarding medical marijuana. It's not in the briefing, but there is pending legislation in Long Beach for the ballot to do that. And so there's no basis for a permanent injunction in this case. And again, if the panel has any questions, I can address those. Thank you. Thank you. I'll give you a brief rebuttal. Thank you, Your Honor. A few very quick points. First of all, as our papers indicate, the right to petition is accorded extraordinary deference, quote, unquote, in California court. And that's from random cases including Native American Sacred Site, which is 120 Caleb 4th, 961 Pinpoint Site, 965 to 966. The intent of the voters here is clear. They wanted this initiative to be on election. This is not a case of election. Was there any evidence submitted to the district court to that effect? No, there is not. Candidly, no, there is not, Your Honor. But it's obvious just from the fact that nearly 15 percent of the voters signed up for this that they're not clear. When they're signing a petition, they like the idea. This is in fine print. If one looks at ER 169, you can see how the petition actually looked. People like the topic. They wanted to vote on it. So that's clear. I want to emphasize one point that the city made to this same court in the last go-around, which is that the city admitted that no harm, quote, unquote, would take or the city would sustain no harm if our requests were granted. Wouldn't there be an added cost? If this is in a general election, the added cost would be less than a special election. A special election would cost about $1.5 million. The general election would be much less. No, my point is in a general election, it's folded into there. So the cost is much less substantial. I think it would be something to the effect of maybe $200 or $300. I could stand to be corrected by the city clerk. But it's substantially less because it's already folded into an existing election. So it's much cheaper. The most important point is the city clerk cannot exercise discretion, and he did here. He exceeded his authority. And there's no need for us to show under a line of cases his bad faith. That's not the issue. The issue is that he improperly inserted himself at a point where he should not have. His job was to do bean counting, which is to say, did this measure have enough votes? And it didn't. Not for a special election, which is what the petition said. That's bean counting. It was not his position to determine that. If it was for anybody to look at that, it wasn't. Wait a minute. You just said his job was to count the beans. That's correct. Count the beans. You gave the petition that asked for a special election. The statute requires 15 percent. Okay. Your idea of exercising discretion appears to be ruled against your client. With all due respect, no, Your Honor, because we did not have to, for the reasons that we submitted before, we did not have to expressly request a special election. So his ---- Then why attack the clerk? Why don't you focus on the legal issue instead of saying the clerk's exceeding his authority and so on and so forth? That's true only if your underlying premise is correct. Yes. So talk about the underlying premise. Don't attack the clerk. He's doing what he's supposed to do, he thinks. Or he did. Again, we're not questioning his bad faith. We're just talking about what the clerk did. And in our view, it was wrong. And the argument you're making there is simply another way of ---- it makes no sense at all unless your underlying premise is correct. So talk about the underlying premise. Don't tell me ---- you're not adding anything by saying the clerk's exercising discretion that he doesn't have. So in any event, we thank you both for your helpful arguments in this interesting case. The case just argued is submitted and we're adjourned. Thank you, Your Honor. All right.
judges: Farris, Clifton, Bea